# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**CHAMBERS OF**
**SUSAN K. GAUVEY**
**U.S. MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**MDD_skgchambers@mdd.uscourts.gov**
**(410) 962-4953**
**(410) 962-2985 - Fax**

March 21, 2013

Lawrence P. Demuth
Mignini, Raab and Demuth LLP
429 S. Main Street
Bel Air, MD 21014

Alex S. Gordon
Office of the United States Attorney
36 S Charles Street, Fourth Floor
Baltimore, MD 21201

Re:  Christine Jones v. Michael J. Astrue, Commissioner, Social
     Security, Case No. SKG-11-3382

Dear Counsel,

     Plaintiff, Christine Jones, by her attorneys, Richard P.
Neuworth and Michael Scott Melick, filed this action seeking
judicial review, pursuant to 42 U.S.C. § 405(g), of the final
decision of the Commissioner of the Social Security
Administration ("the Commissioner"), who denied plaintiff's
claim for Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI") under Title II of the Social Security
Act ("the Act"). 42 U.S.C. § 405(g).  This case has been
referred to the undersigned magistrate judge by consent of the

parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. (ECF No. 5; ECF No. 7).

Currently pending before the Court are cross motions for summary judgment. (ECF No. 16; ECF No. 17). No hearing is necessary. Local Rule 105.6. For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment (ECF No. 13), and GRANTS defendant's motion for summary judgment (ECF No. 21).

## I.   PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on April 24, 2008 (R. 77-80) alleging a period of disability beginning March 8, 2008 due to diabetes, retinopathy, anemia, gall bladder disease, hepatitis E, and high cholesterol. (R. 155). Plaintiff's application was denied initially on June 25, 2008 (R. 81) and on reconsideration on October 30, 2008. (R. 86). The plaintiff attended an administrative hearing on March 1, 2010. (R. 25-53). At the administrative hearing, Ms. Jones amended her alleged onset date to September 17, 2009. (R. 45, 149). She remained insured through June 30, 2012. (R. 12). The ALJ issued a decision on May 13, 2010, finding that plaintiff was not disabled. (R. 12-20). The Appeals Council denied plaintiff's request for review on September 27, 2011. (R. 1-3). The ALJ's opinion is therefore the final decision of the agency.

Plaintiff filed this action seeking review of that final decision pursuant to 42 U.S.C. § 405 (g) on March 18, 2011. (ECF No. 1).

## II.  Factual Background

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record, hereby adopts it.  (ECF No. 17-1, 2-8).

## III. ALJ's FINDINGS

In evaluating plaintiff's claim for DIB and SSI, the ALJ was required to consider all of the evidence in the record and to follow the sequential five-step evaluation process for determining disability, set forth in 20 C.F.R § 416.920(a).[1] If the agency can make a disability determination at any point in the sequential analysis, it does not review the claims further. 20 C.F.R. § 1520(a). After proceeding through all five steps, the ALJ in this case concluded that plaintiff was not disabled as defined by the Act.

The first step requires plaintiff to prove that she is not engaged in "substantial gainful activity."[2]  20 C.F.R. §

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A) (2004).
[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial

416.920(a)(4)(I).  If the ALJ finds that plaintiff is engaged in substantial gainful activity, plaintiff will not be considered disabled.  Id.  The ALJ in the present case found that plaintiff did not engage in substantial gainful activity since her alleged onset date of September 17, 2009.  (R. 14).

At the second step, the ALJ must determine whether plaintiff has a severe, medically determinable impairment or a combination of impairments that limit plaintiff's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  There is also a durational requirement that plaintiff's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that through the date last insured, plaintiff had the following severe impairments: diabetes mellitus, anemia and alcoholism.  (R. 14).

At step three, the ALJ considers whether plaintiff's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" ("LOI") in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  Here, the ALJ found that plaintiff did not

---

if it involves doing significant physical or mental activities and even if it is part-time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when he worked before.  20 C.F.R. § 416.972(b). Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

have an impairment that meets or medically equals one of the listed impairments.  (R. 15).

Before an ALJ advances to the fourth step, he must assess plaintiff's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps.  20 C.F.R. § 404.1520(a)(4)(e).  RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  SSR 96-8p.  The ALJ must consider even those impairments that are not "severe."  20 C.F.R. § 404.1520(a)(2).

In determining a plaintiff's RFC, an ALJ must evaluate the plaintiff's subjective symptoms (*e.g.*, allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.152. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms.  20 C.F.R. § 404.1529(b).  If the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1).  At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant.  20 C.F.R. § 404.1529(c).  The ALJ must assess the credibility of the claimant's statements, as symptoms can

5

sometimes manifest at a greater level of severity of impairment
than is shown by solely objective medical evidence.   SSR 96-7p,
1996 SSR LEXIS 4.   To assess credibility, the ALJ should
consider factors such as the claimant's daily activities,
treatments he has received for his symptoms, medications, and
any other factors contributing to functional limitations. Id.

Here, the ALJ found that plaintiff had the residual
functional capacity to perform a range of light work activity as
defined in 20 CFR 416.967(b) and 404.1567(b) except that
claimant requires a stand/sit option, may never climb ladders,
ropes, or stairs, may only occasionally balance, kneel, crouch,
crawl, bend or climb ramps or stairs, and may not be exposed to
unprotected heights or hazardous machinery.  (R. 15).

At the fourth step, the ALJ must consider whether plaintiff
retains the RFC necessary to perform past relevant work.   20
C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ found that
claimant had the capacity to perform her past relevant work as a
community service officer.  (R. 18).  Specifically, the ALJ
found that claimant's position as a community service officer,
which lasted for four years and was within the past 15 years,
was substantial gainful activity and met durational and recency
requirements.  (Id.).  The ALJ further noted that the vocational
expert testified that claimant's past relevant work as a

community service officer was of light exertion and semi-
skilled, and therefore was not precluded by her RFC. (Id.).

Although the ALJ determined that plaintiff was capable of
past previous work, he also concluded that there were additional
jobs in the national economy that plaintiff could perform.
(Id.). This determination requires consideration of whether, in
light of vocational factors, such as age, education, work
experience and RFC, plaintiff is capable of other work in the
national economy. See 20 C.F.R. §§ 404.1520(f), 416.920(f). At
this step, the burden of proof shifts to the agency to establish
that plaintiff retains the RFC to engage in an alternative job
which exists in the national economy. McLain v. Schweiker, 715
F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d
1050, 1053 (4th Cir. 1980). The agency must prove both
plaintiff's capacity to perform the job and that the job is
available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir.
1983). Before the agency may conclude that plaintiff can
perform alternative skilled or semi-skilled work, it must show
that plaintiff possesses skills that are transferable to those
alternative positions or that no such transferable skills are
necessary. McLain, 715 F.2d at 869. Here the ALJ found that
plaintiff was capable of making a successful adjustment to work
currently existing in the national economy. (R. 18-19).
Specifically, the ALJ found that plaintiff could successfully

work as a general office clerk, gate guard, or ticket taker.
(R. 19).

The ALJ therefore found that the plaintiff was not under a disability at any time since September 17, 2009, the date the application was filed and the date of her alleged onset.  (Id.).

## IV.   STANDARD OF REVIEW

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence—not to try plaintiff's claim de novo.  King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or

substitute its judgment for that of the Commissioner.  Craig, 76
F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.
1990).  The Commissioner, as fact finder, is responsible for
resolving conflicts in the evidence.  Snyder v. Ribicoff, 307
F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings
are supported by substantial evidence, this Court is bound to
accept them.  Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.
1962).

    Despite deference to the Commissioner's findings of fact, "a
factual finding by the ALJ is not binding if it was reached by
means of an improper standard or misapplication of the law."
Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  The Court has
authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse
the decision of the agency "with or without remanding the case
for a rehearing."  Melkonyan v. Sullivan, 501 U.S. 89, 98
(1991).

### V.    Discussion

    The plaintiff made two arguments on appeal, which the Court
shall consider in turn.

### A. The ALJ Correctly Gave Little Weight to The Opinion of Dr. Sivaraman.

    The plaintiff made two arguments on appeal, which the Court
shall consider in turn.  Plaintiff argues first that the ALJ
erred by failing to give either controlling or great weight to

the opinion of plaintiff's physician, Dr. Sivaraman.  (ECF No.
16, 9).  Plaintiff contends that while the ALJ found Dr.
Sivarman's assessed limitations to be out of step with the
medical findings on record, the ALJ erred in not citing to the
specific medical findings considered.  (Id. at 10).  As such,
plaintiff argues that the ALJ's analysis of Dr. Sivaraman's
opinion regarding plaintiff's work-related capabilities was "too
vague to be legally sufficient."  (Id.).

Defendant replies that the ALJ properly cited to several
inconsistencies between the evidence on record and Dr.
Sivarman's conclusions.  (ECF No. 17-1, 11).  Defendant
emphasizes the ALJ's conclusion that Dr. Sivaraman's opinion was
inconsistent with the testimony of plaintiff, the medical
record, and Dr. Sivarman's own treatment notes.  (Id. at 13-14).
Defendant further argues that by citing to both specific medical
records and the testimony of plaintiff, the ALJ properly
explained his basis for assigning little weight to Dr.
Sivaraman's opinion.  (Id. at 14).  Finally, defendant contends
that the ALJ properly concluded that the medical evidence on
record did not support Dr. Sivaraman's conclusions.  (Id.).

The opinions of treating physicians are generally given a
measure of deference by courts due to their "unique perspective
to the medical evidence that cannot be obtained from the
objective medical findings alone."  20 CFR 404.1527(a)(2).  If a

10

treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight.  Id.  However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

   If a treating source opinion does not merit "controlling weight," it should be weighed according to the factors promulgated by the Commissioner in the regulations.  20 C.F.R. § 404.1527(d)(2); SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 (Jul. 2, 1996).  The factors are:

> (1)   The length of the treatment relationship and the frequency of examination;
> (2)   The nature and extent of the treatment relationship;
> (3)   The extent to which the opinion is supported by medical evidence of record;
> (4)   The consistency of the opinion with the record as a whole;
> (5)   The specialization of the treating physician; and
> (6)   Any factors which tend to support or contradict the opinion.

20 C.F.R. § 404.1527(d)(2).

While a non-controlling treating source opinion is entitled to deference, an ALJ may still find, after an analysis of the above factors, that the opinion is only entitled to slight weight.

See, e.g. Thompson v. Astrue, 442 Fed. Appx. 804, 808 (4th Cir. 2011)(affirming decision to afford less weight to a treating physician).   If, for example, a treating physician's final opinion "was not supported by treatment notes or by other information on file," an ALJ may discount the opinion.   Russell v. Comm'r of Soc. Sec., 440 Fed. Appx. 163, 164 (4th Cir. 2011); see also Anderson v. Comm'r, 127 Fed. Appx. 96, 97 (4th Cir. 2005).

In his February 1, 2010 assessment, Dr. Sivaraman stated that he had treated plaintiff since 2007 for chronic diarrhea, Diabetes Mellitus, and Gastroesophageal Reflux Disease.   As such, he was plaintiff's treating physician.   He opined that plaintiff can lift or carry five pounds occasionally and two pounds frequently.   (R. 496).   He stated that due to pain and frequent diarrhea, plaintiff could stand and/or walk for only forty minutes in an eight hour day, and sit for only two hours. (R. 497).   He stated that plaintiff could never climb, balance, stoop, crouch, kneel, or crawl.   (Id.).   He noted that plaintiff must avoid all exposure to extreme cold or heat, wetness, humidity, noise, vibration, fumes, odors, dust, gases, or poor ventilation.   (R. 498).   He concluded that plaintiff "is too weak to be gainfully employed."   (R. 499).

The ALJ rejected Dr. Sivaraman's assessment, finding it to be "grossly disproportionate to the medical findings supporting

the opined limitations." (R. 17).  He noted that claimant

testified that she could frequently lift five pounds (R. 33),

more than the two pounds Dr. Sivaraman assessed.  (R. 17).

Similarly, Dr. Sivaraman's assessment of claimant's limitation

as to sitting was more severe than claimant's.  (R. 17).  As to

Dr. Sivaraman's conclusion that plaintiff had severe

environmental limitations, including heat, wetness and fumes,

the ALJ noted that record demonstrates that plaintiff "does not

have any impairments, such as a respiratory impairment, that

would typically indicate such stringent restriction to pulmonary

irritants." (Id.).  The ALJ similarly did not credit Dr.

Sivaraman's remarks regarding plaintiff's pain because there was

no evidence in the record that he had prescribed any pain

medication to plaintiff.  (R. 17).  Finally, the ALJ concluded

that "Dr. Sivaraman's treatment notes do not reflect objective

medical findings to support these extreme limitations of

function." (Id.).

    The Court finds that this conclusion was properly reached

and is supported by substantial evidence.  While Dr. Sivaraman

is plaintiff's treating physician and is therefore entitled to

some deference, there is little evidence in the record to

support his conclusions.  Contrary to plaintiff's assertions,

the ALJ gave specific justifications for his finding.  He noted

that plaintiff's testimony regarding her lifting and sitting

13

abilities differed from Dr. Sivaraman's findings.  (R. 17).  He commented that plaintiff was on no medications that caused fatigue, and that Dr. Sivaraman had not prescribed any narcotic pain medication – indeed any pain medication.  (Id.)  He correctly noted that there is no objective evidence to suggest that plaintiff was experiencing either the significant pain or pulmonary limitation implied by Dr. Sivaraman's restrictive conclusions. (R. 17 – pain – and R. 14 – pulmonary/respiratory).

Plaintiff effectively acknowledges that she does not experience severe pain, but argues that the limitations suggested were primarily—if not exclusively—due to her diarrhea. (ECF No. 16, 10).  She points to records from St. Agnes Hospital from October 2009 to demonstrate that Dr. Sivaraman's limitations are consistent with the record.  (Id.).  The hospital record states that plaintiff was having heavy diarrhea five to six times a day, and that her symptoms did not improve. (R. 391).

This single record does not provide a foundation for Dr. Sivaraman's conclusions.  While it suggests that plaintiff has experienced severe diarrhea, it does not support Dr. Sivaraman's conclusion that the malady was chronically debilitating. Indeed, as defendant notes, the medical records suggest the opposite.  A colonoscopy showed the possibility of "mild colitis," (R. 392), but was "otherwise normal."  (R. 404).  A

14

pathology report confirmed mild acute colitis in the ascending colon, moderate acute colitis in the descending colon, and mild acute colitis in the superficial epithelium.  (R. 413).  The report notes that "these biopsies suggest an acute self-limited process, although the possibility of acute presentation of inflammatory bowel disease cannot be entirely excluded."  (R. 413).

In this context, "self-limited" means "a disease that runs a definite limited course.  Dorland's Illustrated Medical Dictionary at 1689 (32d ed. 2012).  "Acute" is defined as "having a short and relatively severe course." Id. at 24. These records suggest a severe but isolated illness. They provide little support for Dr. Sivaraman's conclusion that plaintiff was severely and profoundly limited in her ability to work.

There is little other objective evidence in the medical record relating to plaintiff's gastrointestinal issues after her onset date.  Plaintiff submitted discharge instructions—but no treatment notes—from hospital visits in February and April 2010. The April records note a discharge diagnosis of "C. dificil colitis and Ulcerative Colitis." (R. 519).  The discharge records are brief and without detail, however, and do not

contain sufficient information to substantially support Dr. Sivaraman's restrictive findings.[3]

Additionally, the ALJ could and did credit the state agency medical consultants' opinions "that claimant's reported ADLs and limitations are not fully supported by the medical records in evidence." (R. 16). Of course, "if a physician's opinion is not supported by the clinical evidence or it is inconsistent with other substantial evidence, it should be accorded significantly less weight."[4] Accordingly, the ALJ did not err in according Dr. Sivaraman's opinion little weight.

## B. The ALJ Did Not Err In Finding the Plaintiff Lacked Credibility

Plaintiff next argues that the ALJ erred in affording her testimony weight only to the extent it was consistent with the ALJ's RFC. (ECF No. 16-11). Noting that the ALJ took into account an inconsistency in her testimony regarding alcohol use, plaintiff contends that "the ALJ largely relies on this small discrepancy to completely reject" her testimony. (Id.). Plaintiff argues that this "conclusory rejection" is in

---

[3] Emergency room records from March 2008, prior to claimant's onset date, indicate that Ms. Jones was treated for vomiting, nausea, and diarrhea. (R. 301-302). Records indicate that she improved through the course of the day and was discharged approximately 6 hours after being admitted. (R. 300). The records do not suggest that the symptoms were chronic: in answer to a "similar symptoms previously" question in the medical record, a physician only wrote, "admits to a very liberal diet." (R. 301).

[4] Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

violation of SSR 96-7p.  Defendant responds that plaintiff

misstates the record, arguing that in fact the ALJ advanced

several rationales for his conclusion regarding plaintiff's

testimony.  (ECF No. 17-1, 18-19).

An ALJ's credibility analysis is a two-step process. First,

the adjudicator must consider whether there are underlying

medically determinable physical or mental impairments that could

reasonably be expected to produce the individual's pain or other

symptoms.  20 C.F.R. § 404.1529(b).  Second, if the underlying

physical or mental impairments are shown, the adjudicator must

evaluate the intensity, persistence, and limiting effects of the

individual's ability to do basic work activities.  Id., SSR 96-

7p, 1996 SSR LEXIS 4, *2.

The final credibility determination "cannot be based on an

intangible or intuitive notion about an individual's

credibility," but must "contain specific reasons for a finding

on credibility."  SSR 96-7p.  A "single conclusory statement"

that plaintiff's allegations are not credible is insufficient.

Id.  ALJs are directed to consider a non-exclusive range of

factors in making their determination.[5]  Id.  In addition, an ALJ

---

[5] These include: 1) The individual's daily activities; 2) The location,
duration, frequency, and intensity of the individual's pain or other
symptoms; 3) Factors that precipitate and aggravate the symptoms; 4)  The
type, dosage, effectiveness, and side effects of any medication the
individual takes or has taken to alleviate pain or other symptoms; 5)
Treatment, other than medication, the individual receives or has received for
relief of pain or other symptoms; 6)  Any measures other than treatment the

may consider the opinions of state-agency examiners as to whether the objective evidence on record supports the claimant's alleged limitations.  SSR 96-7p.  Non-compliance with treatment may be "particularly appropriate" to the assessment of a claimant's credibility.  Culotta v. Astrue,  No. SAG-10-cv-3137, 2011 U.S. Dist. LEXIS 120747 *19 (D. Md. 2011).

The ALJ here considered several factors in his assessment of plaintiff's credibility.  First, he stated that he accepted the opinions of state agency medical consultants that claimant's alleged limitations "are not fully supported by the medical records in evidence." (R. 16).  Second, the ALJ found plaintiff's claim that she no longer drank alcohol to be less than fully credible. (Id.).  He noted that while plaintiff stated that she stopped drinking in September 2009, a February 2010 medical assessment indicated that plaintiff had not consumed alcohol for three months, suggesting that her cessation date was in fact October 2009. (Id.).  Third, the ALJ noted that medical records from a February 2010 hospital visit were "suspiciously incomplete." (Id.).  Finally, the ALJ found that claimant's "general noncompliance" with treatment had likely exacerbated her condition. (R. 17).  Ultimately, the ALJ

---

individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR No. 96-7p.

concluded that claimant's statements were not credible to the
extent they were inconsistent with the ALJ's RFC formulation.
(R. 16).

This conclusion was properly reached.  The Court agrees with
plaintiff that the one-month discrepancy in her statements
regarding alcohol cessation is insufficient, alone, to cast any
significant doubt on her credibility.  The ALJ's discussion was
not as limited, however, as plaintiff suggests.  The ALJ, as per
SSR 96-7p, also properly considered the findings of the state
agency medical consultants.  In addition, the Court agrees with
the ALJ that plaintiff's submission of only discharge
instructions related to her February 2011 hospital visit, and
not treatment notes, raises some doubt, particularly because the
post-onset medical record in this case is otherwise relatively
slight.[6]  Finally, the ALJ emphasized that plaintiff's
noncompliance cast doubt on the severity of her symptoms.
Indeed, the record suggests that plaintiff was at times
"extremely non-compliant."  (R. 258).

The Court finds that the evidence of non-compliance, the
opinions of state agency consultants, and plaintiff's failure to
provide a full treatment record, together form a sufficient
basis for the ALJ's finding that plaintiff lacked credibility as

---

[6]At plaintiff's request, the ALJ kept the record open for ten days following
the hearing to allow plaintiff to submit the hospital records related to the
February hospital stay.  (R. 28).  Plaintiff does not argue that she had any
difficulty obtaining treatment records.

to the extent and severity of the pain, other symptoms and limitations that she claimed.

## Conclusion

For the reasons set forth above, the Court finds that the ALJ committed no errors in his opinion.  Accordingly, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's motion for summary judgment.

Despite the informal nature of this letter, it shall constitute an Order of the Court, and the Clerk is directed to docket it accordingly.


Date: 3/21/13                          /s/
                              Susan K. Gauvey
                              United States Magistrate Judge